BANKS, Justice,
dissenting from denial of motion for rehearing.
¶ 40. On reconsideration, I am compelled to dissent from the denial of Mr. Harris’s and Ms. Anderson’s motion for rehearing in this matter because this Court has decided to apply a new doctrine on an appeal from a grant of summary judgment to dispose of a material issue of law adversely to the appel-lees.[1] Thus, the appellees are wholly deprived of an opportunity to confront this claim with proof. This Court should not be the instrument of such a blatant denial of due process.
¶ 41. As the petitioners pointed out in their request for rehearing, the doctrine of execu-torship de son tort that has been utilized by this Court to reach its conclusion is subject to defenses that the petitioners could have asserted had Claud Johnson invoked this doctrine in support of his claim to heirship in the chancery court below. Indeed, that doctrine was never raised by any party: not in the chancery court below, not in the briefs on appeal, not even at oral argument; This Court has reversed the chancery court’s grant of summary judgment on a clear statute of limitations issue, then, on a fact-intensive legal theory of fraud, and has rendered judgment in favor of the. party opposing summary judgment. Petitioners have had no opportunity to make any record on their liability as executrices de son tort, nor any opportunity to assess the causal connection between any such liability and the statute of limitations here at issue in Claud’s claim. They are entitled to a remand to develop the record on this question.
¶ 42. This Court has seen fit in other cases to address fraud when it leaps up out of the record but has not been raised by the parties. See, e.g., In the Matter of Flowers, 493 So.2d 950 (Miss.1986) (reversing chancellor’s decree where record indicated possible fraud on the court, and remanded for determination of the nature and effect of the possible fraud). However, it has also quite properly remanded the causes in those instances for further development of the record below. E.g., Id. at 951.
¶43. In my view, a remand is especially appropriate in this case because the Court was unable to conclude with certainty that the petitioners’ “intermeddling” that gave rise to their status as administratrices de son tort occurred during the relevant time period, the three-year window given claimants such as Claud by statute: “Both executrices de son tort took actions with LaVere and other third parties which likely chilled any interest that LaVere or others would have had in coming to Mississippi and locating the rightful heirs” (emphasis added). Supra at 823. Petitioners’ actions that occurred prior to 1977 were not in fact “in-termeddling” in any of Claud’s rights to Robert Johnson’s estate, because Claud had no recognized rights to that estate prior to the United States Supreme Court’s decision in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) (striking down a statute that denied rights of intestate succession from fathers to children born out of wedlock). See In the Matter of the Estate of Smiley, 530 So.2d 18 (Miss.1988) (children born out of wedlock had no right to share in father’s estate before July 1, 1981, with the passage of Miss.Code Aim. § 91-1-15).
¶ 44. Thus, the intermeddling such as would cause an impairment to Claud’s capacity to assert his own rights logically could not have occurred until after 1977, when Claud’s potential right to his putative father’s estate was first suggested as a matter of federal constitutional law. Although the record does suggest some actions on the part of Carrie Thompson which might be considered “intermeddling” within the meaning of this doctrine, the record is plainly not fully developed on the question of when the in- *825 termeddling, if any, occurred. Thus, the petitioners should in all fairness and due process be given an opportunity to address the allegation that they behaved in a manner which should excuse Claud for his failure to act within the statutory period, and offer any defenses that they may have. Of course, Claud would also have an opportunity on remand to more fully develop any claim of executorship de son tort.
¶45. That said, I have some reservations about the Court’s use of this doctrine to toll the statute of limitations that would have otherwise barred Claud’s claim. Executor-ship de son tort is universally deployed (outside of this State, as of today) “only for the purpose of suing an intermeddler or making him liable for the assets with which he has intermeddled.” 31 Am.Jur.2d Executors and Administrators § 31 (1989). Indeed, although an executor de son tort has by law become something akin to a constructive trustee, he remains entitled to payment from the rightful administrator of an estate in reimbursement for his proper expenditures that were undertaken for the benefit of the estate. Id. at § 47. The principles that guide such executors’ liability do not, to say the least, bespeak any punitive recriminations that typically characterize the types of fraud that are often used to equitably excuse the operation of independent statutes of limitations. Indeed, I have seen no authority in any jurisdiction for the proposition that executorship de son tort necessarily implies such malign intent on the part of the tortious executor as will toll a statute of limitations that might independently operate to bar another claimant against an estate.
¶ 46. Nevertheless, I do find marginally defensible, particularly in light of our related precedent, that aspect of the Court’s decision that may be read to hold that a showing that the petitioners acted as executrices de son tort (or “executrices in their own wrong” as defined in Miss.Code Ann. § 91-7-249) during Claud’s three-year window could have sufficiently caused his failure to assert his claims against his father’s estate so as to toll the statute of limitations. While I am inclined to affirm the chancery court on the basis of this record, this Court has tolled statutes of limitations, even the limitation in § 91-1-15, where it has found that a fraud has been perpetrated upon the Court, such as where the administrator knew of an heir and failed to notice him or notice the court that the estate had been opened. See, e.g., Smith v. King, 501 So.2d 1120, 1122-23 (Miss.1987) (holding that proof that an ad-ministratrix committed fraud upon the court when she knew of an illegitimate child of the decedent but failed to inform the chancery court of the child’s existence would serve to toll the time bar of § 91-l-15(3)(c), where petition for heirship was otherwise untimely filed); see also In the Matter of Flowers, 493 So.2d 950 (Miss.1986) (remanding for consideration of whether fraud was perpetrated on the court, which would toll the time bar of § 91-l-15(3)(c) of an otherwise untimely claim).
¶47. The Mississippi Legislature has also seen fit to toll a statute of limitations when the cause of action has been fraudulently concealed from a claimant by the defendants in the action. Miss.Code Ann. § 15-1-67. These same principles, that claimants’ ability to assert their claims cannot be abrogated by others’ adverse actions, imply that a finding of executorship de son tort will operate in a similar tolling manner where there is some showing that the act of intermeddling caused the claimant’s failure to comply with the statute of limitations. This conclusion is especially appropriate with regard to the statute of limitations in § 91-1-15, a statute which we have commanded to be interpreted broadly. Larsen v. Kimble, 447 So.2d 1278, 1279 n. 1 (Miss.1984).
¶ 48. That said, I reiterate my view that the motion for rehearing should be granted, and the Court should remand this action, which came before us from a grant of summary judgment, for a development of the record on the causal relationship between the petitioners’ intermeddling and Claud’s failure to assert any claim that he may have had to his father’s estate during the statutorily prescribed three-year window.
PRATHER and SULLIVAN, P.JJ., and PITTMAN, J., join this opinion.

. I have also, on reconsideration, concluded that the use of the term "illegitimate” in the majority opinion to describe and refer to people born of unwed parents is outdated and derogatory, and unbecoming of this Court. Moreover, I believe the use of this term contradicts the spirit of Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), the case that first recognized that the rights of so-called “illegitimates” enjoy equal footing with those of their “legitimate” co-heirs. Indeed, it is ironic as well as unfortunate that an opinion which in fact legitimizes the claims of the alleged child of an unwed union between Robert Johnson and Virgie Jane Smith nevertheless refers to that child and others who are similarly born as "illegitimate.”